## Commonwealth v. Stone

*Robert F. Banks,* Assistant District Attorney, for Commonwealth.

*Joseph P. Valentino,* for defendant.

STRANAHAN, P. J., December 4, 1970.—And now, December 3, 1970, this court, having conducted an evidentiary hearing in this matter, makes the following findings of fact:

## FINDINGS OF FACT

1. That on August 9, 1970, shortly after midnight defendant was at the Greenville Hospital, Greenville, Pa., where he was attended by Dr. C. J. Poolos, who sutured a laceration on defendant's head and otherwise examined him for his general condition.

2. After making this examination, Dr. Poolos released defendant, and at about 12:30 a.m. Dr. Frank McElree requested of defendant that he submit to the taking of a blood sample, stating to defendant that the purpose was to determine the alcoholic content of his blood, and if the alcoholic content were low or there were no alcoholic content in the blood, it would be favorable to defendant, but on the other hand, if it were high, it would be held against him. He did not tell defendant that he had to take the test; however, he did not tell defendant that he did not have to take the test. No force of any kind was used, nor was there a police officer present when the conversation took place. Defendant responded that he was willing to submit to a blood test and held out his arm indicating his willingness to do this, and told Dr. McElree to take the blood, that they had taken everything else, or words to that effect.

3. Defendant had sufficient mental capacity at that time to know what he was doing and understood what Dr. McElree had said to him.

4. The State Policeman, Ronald J. Morey, was in the hospital during this time, but was not in the emergency room, nor was he present when the sampling of blood was taken.

5. At that time, defendant was not under arrest and Dr. McElree was acting in his capacity as a Deputy Coroner of Mercer County.

6. Trooper Morey later took the vial of blood with him when he left the hospital that night. The sampling of blood was not needed for medical purposes, but rather was taken for the sole purpose of diagnosing its content to determine if alcohol was present in the blood.

7. It is stipulated by the parties that the arrest made by Trooper Morey at the Greenville Hospital was an unlawful arrest for the reason that he had not viewed the violation.

## CONCLUSIONS OF LAW

The section of The Vehicle Code which deals with chemical tests to determine intoxication is 75 PS §624.1. Under the terms of this section, it is required that there be probable cause for the police officer or other government agent to believe that defendant is under the influence of intoxicating liquor.

In the present case, the evidence is clear that the police officer did not have probable cause to believe that this defendant was under the influence of intoxicating liquor. It also has been stipulated that the arrest of defendant by the State Policeman was an unlawful arrest, because he had not witnessed the offense of driving under the influence, and therefore he could not make such an arrest unless the violation occurred in his presence.

Since the arrest was unlawful, the rule of Schmerber v. California, 384 U.S. 757, is not applicable.

The real issue in this case is whether or not section (d) of 75 PS §642.1, is applicable. This section provides that the other provisions of 75 PS §624.1 shall not be construed as limiting the introduction of any other competent evidence bearing upon the question

of whether or not defendant was under the influence of intoxicating liquor. This section has been interpreted to mean that a sampling of blood obtained lawfully, but in some other manner than the method described in the provisions of section 624.1, may be received into evidence.

For example, in Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148, the blood sampling was received from a hospital which had been holding a sampling of defendant's blood for medical purposes. Since the sampling was lawfully obtained, it could be used, even though it was received in a method other than that prescribed under section 624.1.

It is the Commonwealth's contention in the present case that defendant consented to the taking of his blood by Dr. McElree, the deputy coroner, and therefore this blood is proper evidence under section 624.1(d), since it was received in a method other than that method prescribed by section 624.1, yet it was lawfully received.

In Commonwealth v. Klinedinst, 82 York 198, a problem similar to the present one arose, and the question discussed was whether or not there was a consent voluntarily given by defendant. To be a voluntary consent it must be "unequivocal and specific and further must be freely and intelligently given." See discussion and collection of cases in 9 A.L.R. 3rd 858.

In the present case, defendant, who obviously had been involved in a substantial automobile accident, was present in the hospital when he was approached by the deputy coroner, and advised that the deputy coroner desired to take a sample of his blood. Defendant was further informed that if the sample showed no alcohol or a low degree of alcohol in his blood then it would be favorable to him, but, on the other hand, if it showed a high degree of alcohol, it would be unfavorable to him. He was not advised that he had the

right to refuse to take the test, nor was he advised of the fact that this test could be used in an involuntary manslaughter proceeding against him. Based on this statement by the deputy coroner, we do not believe that the consent of defendant was freely and intelligently given.

For this reason, we rule that the motion to suppress the results of the blood sampling taken by the deputy coroner at the Greenville Hospital is granted.

### ORDER

And now, December 4, 1970, the motion to suppress the results of a blood test taken of defendant is granted, and it is directed that the Commonwealth shall not offer any evidence concerning this test at the time of trial.